The next case for argument is 22-2079, Rimco v. United States. Good morning, Your Honor. May it please the Court, this is a case concerning the jurisdiction of the United States Court of International Trade, and particularly the basis of jurisdiction on which the Court may consider a challenge to an assessment of duties which is claimed to be an unconstitutional, excessive fine in violation of the Eighth Amendment. Our client, Rimco, was charged with anti-dumping and countervailing duties in aggregate amounts of up to 688%. These rates had been set by the Commerce Department on the basis of adverse facts available against certain Chinese producers. Our client was not involved in that. Our client is purely an importer. When customs assessed the duties... Is there anything that prevents your client from participating in the administrative reviews of these anti-dumping and countervailing duties? Yes, two things, Your Honor. First of all, it would have been futile. No, no, I don't want to talk about futility yet. Doesn't the statute allow the importer to participate in the reviews? It allows the importer to participate. By the time the assessment was made on our client, however, the administrative review which set those rates had passed. Now, the only... They renew it every year, right? They do, but we... So your client would be an interested party that would be allowed to... We would be an interested party, but we would have no information to contribute. Our challenge is purely... We don't claim that we lack the notice of the opportunity. What we're claiming is that we did not have a remedy in front of the agency. That could be the subject. Right, and the reason is that, what, do you think Commerce would not have addressed the Eighth Amendment issue on the merits? Correct. So why would you think that it is somehow more likely that customs would? Customs would not... So either way, in your view, you have to get to the trade court. Yes, and customs... And 1581C gives you a route to do that by participating in the administrative review. It does not, Your Honor. Wait, I don't understand that. If you went to the review and you told Commerce, these rates are excessive, that they're in excess of what the statutes and regulations allow, but they also violate the Eighth Amendment, do you think Commerce wouldn't address those arguments? I think Commerce would not address the argument, and that's because... It would address the former, obviously, about whether they're in excess of what the regulations and statutes allow, right? There's no longer any basis to challenge an AFA determination as excessive. This is because Section 502 of the Trade Preferences Extension Act in 2015 provides that Commerce has no obligation to make certain estimates or address certain claims. Now, formerly, the rule... I don't understand this argument at all, because we get these AFA cases all the time where the parties involved are saying the adverse facts rate is too high, and we routinely send them back to Commerce to look at it and say, is this punitive versus not punitive? And why couldn't you have done that here and said, these rates are punitive? Because in Section 502 of the Trade Preferences Extension Act, Congress said that Commerce has no obligation to make certain estimates or address certain claims. Before the 2015 amendment... Are you saying that means that the court and us no longer have the authority to review Commerce's assessment of rates under adverse facts? That's not what that statute means. I think it does, Your Honor, because... Let's just assume you're wrong. I don't want to debate that. I think you're wrong. Let's move on. Why couldn't you have made this to Commerce? I assume your argument is really that the Chinese exporters will refuse to provide the documentation again, and you have no control over them, so you're still going to end up with that AFA rate. Well, that's correct. So what? You're the one choosing to buy from these exporters that don't participate in the process and end up with a high rate. Well, in our case, we purchased from one of those producers. We purchased from another producer that was assigned the 688% as a China-wide rate and was not, in fact, the party that had defaulted. But the fact of the matter is this is a constitutional challenge, and there is no more statutory challenge to an AFA rate as being excessive. I never heard an answer to Judge Taranto's question. I think it was his question, like, and why does Customs have more authority or ability to assess or evaluate the constitutional question than Commerce would? I don't think that they do have any more competence, but they are the agency that assesses the duty and inflicts the constitutional injury on our clients. They assess it, but don't you construe it as, is it not a ministerial act for them to assess the duty that is Commerce's? It may be. It's a ministerial act, Your Honor, but a protest takes up all findings and determinations entering into the liquidation. But you know there's that precedent that says that when Customs makes a ministerial act, it doesn't come under the protest jurisdiction. That's why we packaged our case so that it met the jurisdictional requirements, both for 1581A protest jurisdiction, or as the trade court concluded, this was not protest jurisdiction. I don't understand why you didn't package your case under C. You would be here. You'd still probably lose, but you'd be here. Again, I don't think so because, first of all, the administrative agency is not a proper place to raise a claim of constitutionality. Number two, the trade court, if the court— Yes, but there is the principle that if the issue can be resolved on non-constitutional grounds, then the constitutional issues are to be avoided. And if you think that the AFA rate is punitive and not remedial, then there's plenty of precedent to say that you can get it there. In fact, our case law and the Court of International Trades case law makes clear that these rates are not meant to be punitive. They're meant to be remedial. And so you could have solved it on a non-constitutional ground. I understand practically your client's problem. You're not going to get a resolution because the Chinese exporters are not going to participate, and commerce is going to say we don't have any other information except to impose the AFA rate. But at least you would have gone through the right jurisdictional process. Again, I don't think so. I think Section 502 of the Trade Preference— Let me just set that aside. We can read that, but I don't think that that says what you think it says. Well, it says there under no obligation— Okay, you can keep arguing this way, but I told you to set it aside and move on. I don't—you know, if I determine when I go back and look at this that I agree, we'll write it that way, but right now you're wasting your time. So here is my question is, if commerce sets rates under the AFA that have to be remedial, as required by the statute and by our precedent, and aren't punitive, how could those ever possibly be an Eighth Amendment violation? Your Honor, the prior law—well, first of all, a calculated rate would never be an Eighth Amendment violation. This is a calculated rate. It's just an AFA calculated rate. No, it's not a calculated rate. It's an assigned rate. It's not calculated based on information. We don't need to quibble about terminology. Is there some notion that the AFA statute and regulations supporting it are itself unconstitutional, are making a facial challenge to it? Not a facial challenge. A challenge as applied in this case. The facial challenge says—the statute says that commerce is not required for purposes of the statute or any other purpose to estimate what a countervailable rate or subsidy would have been had the party cooperated or demonstrated that the countervailable subsidy— That's the point of adverse facts. They didn't cooperate, so they can use the methodology for adverse facts to come up with the highest rate that's remedial and not punitive. That's consistent with our case law. How is a rate that's consistent with our case law and the statute ever an Eighth Amendment violation? That has to be determined by a court. The test was set out by the Supreme Court in 1903 in the case of Hellwood v. United States. And what it said there is, first of all, you need to have a judicial determination of something being unconstitutional. The agency's determination is insufficient. And the court there held that if the amount is so large in proportion to the value of the merchandise imported, to show beyond doubt that it was some imposed, not in fact as a duty on an imported article, but as a penalty and nothing else, then it violates the Eighth Amendment. Now, Congress— But if it's a proper AFA rate and it complies with our case law that says it has to be remedial and not punitive, then it is not an excessive penalty. It is a proper remedial rate. Well, that's not what this court's case— You think something that is a proper AFA rate that's remedial and not punitive could nonetheless be so punitive that it violates the Eighth Amendment? It's not punitive in violation of the statute, but it can be punitive in violation of the Constitution. It can be an excessive fine. That sounds to me like you're saying that Congress gave commerce unconstitutional authority. Congress gave commerce immunity from having to consider arguments that AFA rates, no matter how set, are too high. They deprived us of a statutory remedy. Our only remedy left is to say this is unconstitutional. And this court's 2016 decision in the Nanyang Plastics Court case said that. You said that the court said that commerce no longer has to consider challenges to these AFA rates, but it is constrained in setting AFA rates by constitutional concerns. And this is the problem. If you said, let's go to commerce— What was the jurisdictional basis for that case? For— For the case you just cited to us. It was probably— It came up in C. Yeah. So you can make that argument in that case in C. Why can't you make it in this case in C? Again, because I think the 15, Section 502, says that commerce is under no obligation to make certain estimates or address certain claims. There's a separation of powers— What you just read to us said they're under no obligation, but they have to do it within constitutional bounds. So at least the court in that case seemed to believe that they had the authority to second-guess commerce's determination for constitutional reasons in a C case. Well, here's the problem. It's a separation of powers problem. Congress said to commerce, you're not obligated to address certain claims. So if I make a claim to commerce that this is an excessive rate, unconstitutionally so or otherwise, they're under no obligation to address it. And judges are not— Under no obligation to determine whether it approximates an actual margin, but they are under an obligation to comply with the AFA statute and regulations. Right. But the AFA statute now divorces them from reflecting the alleged commercial reality of the interested party. Mark, can I ask you one other question before your time runs out? Sure. Do you think that Mitsubishi has any bearing here, and does it not control, and would we not have to take it en banc and reverse it in order to find for you in this case? I don't think that Mitsubishi controls because it predates the enactment of Section 502. But again, to the separation of powers, this is what Judge Barnett said in the court below. Well, if I didn't like the constitutional decision or the determination that commerce made under C, I could send it back to him and say, make a different determination. My response is, no, you can't. Because Congress has said that commerce may not be required to address certain claims, and the judiciary branch can't overstep that. That's why we have brought this claim, not through commerce, but through customs, the assessing agents. Honestly, can I just ask one more time? That sounds like you're making a constitutional challenge to that statute, that commerce has been given too much authority and that it can set excessive rates. If commerce assessed an AFA – But that doesn't sound like the right reading of that statute. And aren't we obligated to read a statute in a manner that makes it constitutional? I'm not saying the statute is unconstitutional facially. I'm saying, as applied in this case, it yielded a rate which was an Eighth Amendment excessive fine. Let's say you had gone through the C process, and commerce had said, this is consistent with our AFA statutes and regulations. It's a remedial rate. It's the highest remedial rate we can impose, but it's not punitive. Could that nevertheless be an Eighth Amendment violation? If it's excessive, the question of punitive versus remedial isn't the issue here. That's what it means to be an Eighth Amendment excessive fine, that it's overly punitive. Well, this is. I mean, this statute allows the agency to deem rates without regard to considerations of commercial reality. That's remarkable in itself. But what if the court, what if we went to commerce under C and said, isn't this unconstitutional? And commerce would say, we don't have to address that. And then you go to the courts and you say it's unconstitutional, and the courts address it. This happens all the time in cases where there is an administrative layer review where you have a constitutional challenge. You can bring it to the administrative body, and even if they can't hear it, you can bring it to the courts. We have case law on this from other administrative bodies. But that's the point, Your Honor. If they don't have to listen to it, then that remedy is futile. No. Our case law, in fact, says the opposite in some cases. That you still need to bring it because there may be facts that can be developed by the administrative body that would aid the reviewing court in making that constitutional challenge. In a particular case, but our claim is... Why is this not one of them? We need to know what the facts are that makes this an excessively punitive fine that it violates the Eighth Amendment. And we can't do that as a court. Commerce has to do it. Our client's an importer. It doesn't have any information about the foreign shipper. It has no information to bring. If there were a basis to resolve this, except on the constitutional issue, then, yeah, present it to the agency, and the agency will try to decide it under constitutional avoidance. What kind of factual inquiry, including discovery, do you think would be available in the trade court that would bear on this question? If the trade court took the case up under 1581A, it would be decided on a de novo record. It would be decided what? De novo. The parties would put their evidence... So at that point, you think you could get information from the Chinese producers or exporters from which you buy? No. What we would do is we would put on the record the way that commerce calculated its rates in these cases and argue that the rates in quantity are just so large and so offensive as to violate the Eighth Amendment. But those rates and all the calculations are already on the record from the sea proceedings. You're more likely to get information from the Chinese companies if you go from commerce. Perhaps in a review, they can go back to China and say, you're a mandatory respondent, you're a mandatory respondent. Maybe they'll get a response. Who knows? Probably not factually, but commerce has the authority to go to China and ask for information. Does the trade court have the authority to get information from China? No, and I don't think the trade court has to get any other authority from China. The trade court has to ask, how did these huge margins exist, and then apply the test in Helwig. We know how they exist. Commerce did an AFA calculation under its authority, and review could have been sought in the court of international trade in here. Well, here's what commerce did, in fact, on the countervailing duty side. They determined all 45 programs from China ever determined to be countervailing. Do you think these cases are extraordinary, somehow unusual for anti-dumping, countervailing duty cases from China, and that these rates are extraordinary? Because they're not. I see these cases all the time. Right, okay, but again, the foreign producer is not the one paying the duty. The foreign producer is not the one with prudential standing. To challenge this is unconstitutional. Yeah, it happens all the time. Should it? Our client is here saying, no, this rate is too high. Commerce took all 45 programs they've ever determined to be countervailable, and determined that these foreign shippers benefited from every one of them. The program for domestically owned companies. The program for foreign owned companies. The one for companies in the south. The one for companies in the north. That's how they came up with the rate. And it's up to a judge, a court of international trade, not to an agency, but to an Article III judge, to make the determination of whether that rate offends the Constitution. And you say that it can only get to the CIT through the customs, through a challenge to customs as opposed to commerce, that that's a determining factor in that regard? Well, you know, this court's jurisprudence has said that you can raise a constitutional issue under the residual jurisdiction. Only when no other provision is available. Right, well, in the Swisher case. You know what? Sorry, I'm over time. The Swisher is a harbor maintenance tax case. The harbor maintenance tax was an extraordinary situation that didn't fit in with the normal taxes levied by either customs or commerce. And the court struggled to find where jurisdiction lied to challenge it, because it didn't in itself say what the jurisdictional method was. So Swisher, I find, in opposite. We're talking about anti-dumping and countervailing duties. And there is a comprehensive administrative and legal structure in the courts to review those. And you're trying to go around that for what is unclear to me reasons. Well, we're doing it because Section 502 makes our 1581c remedy futile. And that's clear. So I'm way over my time, Your Honors. We'll restore and rebuttal. Thank you. Thank you so much. Good morning, Your Honors. May it please the court. Can you make some sense of this argument that commerce can't address his argument because of the statutory exclusion? I don't think it's accurate. It says that commerce is not required. Commerce is entitled to listen to. There was an opportunity for this particular importer to be heard on the first review. And they chose not to come in. They could have come in and said, I have more information. It may not be from the people in China, but I have from other countries. I have from other people. I have a confidential informant. Whatever. Whatever they want to place in front of commerce. But this court, as Your Honor has noted, has said time and again, the best place to go is to go to the agency with expertise in setting these rates. If the importer believes these rates are so offensive as to offend the Eighth Amendment, the only way you're going to offend the Eighth Amendment is to be disproportionate. The question is, disproportionate to what? So you have – Is it the government's view that commerce could make a determination if raised as to whether or not there's a constitutional Eighth Amendment violation here? Your Honor, if an argument that that rate that was set is offensive to the Constitution because it is disproportionate from this set of facts, yes. Then commerce, and really what it kind of devolves down to, is this case is truly a case about I hate the rates, they're too high. Well, give commerce more information and let them give you lower rates. I guess I want a more direct answer. I thought your brief was not direct in answering the question. Would commerce, if presented with a challenge that the rates are unconstitutionally high, address that on the merits? And I don't want you to say, well, the Eighth Amendment is really equivalent to the non-punitive aspect of 1677E, and it would address that as it would indirectly address it. Would it give an answer, we conclude there is no Eighth Amendment violation here or not? Your Honor, I believe that it could, but obviously it's not – Really? I'm really surprised to hear that from the Justice Department, that they think the agency can make a constitutional determination. Well, I mean, it's not going to be a binding determination, but it can be that we acknowledge that you're bringing this in under the Eighth Amendment. Wouldn't they just say, yes, we've looked at these and these rates are punitive and therefore not consistent with the AFA statute and therefore lower the rates to what they consider the highest possible remedial measure? Yes, because, Your Honor, I think that obviously the agency is focused on setting rates. It's not focused on making constitutional determinations. And the reason this Court has said – I think the only way his argument makes any sense is that there are – a rate that is remedial, not punitive under the statute, but is still unconstitutional under the Eighth Amendment. I don't know that – Is there any possibility of a rate that is remedial and not punitive, but nonetheless violates the Eighth Amendment? No, I don't think that there is. Well, can I just go back to this question? So it's – do you have a view from the Justice Department as to whether or not Commerce could make a decision on the constitutional claim? And if your answer is you don't know or you don't think it could, would that preclude the CIT from adjudicating the constitutional claim when it's reviewing what Commerce did? I don't know and I don't think it would for the agency, but I also think that a case that's set up properly jurisdictionally through C, the CIT can weigh in on whether or not that rate is possibly violative of the Eighth Amendment. But I know that the CIT would first turn, because every federal court first turns to the facts. If there's a way to avoid a constitutional issue, we go to the facts. And if the facts of the case are that it is remedial, if it is remedial, then it per se can't be punitive. And if it's not punitive, it's not under the Eighth Amendment. Can I – I don't have 1677E in front of me, but subsection B is not a mandate, is it? Or is there some discretion about – 1677C. This is the adverse facts available that, you know, A is don't throw away the case. If you don't have enough facts, decide it. And then B says if there's been sufficiently bad cooperation, then is the word may, shall, whatever it is, use the worst facts that there are? It says it may. May, okay. Congress may use any reasonable method to establish. Right. So why if it says may, and I'm still not quite sure of your answer. I thought, and this is what I kind of – why would Commerce, if presented with an argument that this is not only punitive and not remedial, and Commerce then says, no, I don't really think it's punitive.  But he also is arguing, well, if that's what you think, then we also think it's an Eighth Amendment violation. Why would Commerce not have the authority to say, we're going to look at the constitutional standards, and if we conclude that the constitutional standards are such as to make this unconstitutional, we will exercise our discretion not to, as applied, violate the Constitution? Well, I think that if Commerce concludes it's remedial, then I think that takes the Eighth Amendment issue off the table because – That's a merits argument about the Eighth Amendment. We do not have briefing about whether the Eighth Amendment goes beyond what would be considered remedial under 1677E sub B. We have to assume that there is a possibility, because we do not have a merits analysis of the Eighth Amendment here, and I'm just trying to figure out whether Commerce would have the authority to exercise its discretion in light of a, by assumption, a persuasive analysis of why the Eighth Amendment would make this particular number too high. I don't think that Commerce has that expertise. It's going to look at the facts provided with respect to the rates that it's setting. What would be the reason, I don't know, yeah, what would be the reason that Commerce would not have authority to follow the Constitution in exercising discretion? Well, I don't think it is making constitutional determinations. I think it's acting within the scope of the Constitution when it is – That's a merits – I think you just made a merits point about what the statute, the Eighth Amendment, requires. But I think – I want to assume that this would be an Eighth Amendment violation, and you're saying Congress is obliged to ignore that in exercising its discretion. I think that – I think initially you said, no, it could do that, which I – and I'm trying to understand, because then there was a colloquy with Judge Hughes about Justice Department really doesn't say that very much, this is sort of surprising, something like that. And I'm trying to understand why Commerce would say we will blind ourselves to the constitutional requirement because we just don't have authority to do that. Well, I don't think they – I don't think that they would, but I think that there's – I think there's a compression and convergence because the Eighth Amendment requires disproportionality so extreme as to be punitive. But now we're talking about an analysis of what the Eighth Amendment requires. I think for these purposes, at least for purposes of my question, I want to assume that there is an argument, not facially ridiculous, that the Eighth Amendment in fact might require something – might require something more than the non-punitive but remedial constraint on 1677E. So I think in a situation like that, I think that Commerce can consider the constitutional argument, but I think that what happens with Commerce is that once it's made a determination that the facts that it has before it don't warrant that this is – that the rate is too high and that that rate is actually appropriate, then it would not be able to find a constitutional problem because it's setting it within the construct of its own statutes. It's following its own statutes and it's finding it remedial and not punitive. What it does do is at least provides a setup of factual information to allow the constitutional issue to be heard because, like I said, I think there's a merger that will occur at Commerce. If the rate is punitive, then whoever is complaining is showing Commerce through some facts. This is just simply punitive. We need facts here because there has to be a comparison to have disproportionality, and that's the real problem under the Eighth Amendment. This is why the 1581C jurisdiction is so critical here because we need Commerce in the first instance to have an opportunity to hear things that fall within its expertise. There may be additional information that wouldn't typically show up because the information that Commerce can hear is beyond just what other petitioners or AFA or anything. There could be a confidential informant. There could be comparisons to other countries. I don't know. There could be something that moves Commerce. We don't know here, though, because no one tried, and that's the sticking matter here. So are you telling Judge Taranto in response to his question that, yes, Commerce would evaluate based on the facts and based on the record it ascertains whether or not it was consistent with the statute, but then it would also be able to and reach and, therefore, because we think the two coincide, but do an analysis under the Eighth Amendment as well? I think, yes. I think it's implicit. And I think if the rates are so high as to be disproportionate to the facts in the case, then what we've done is we have fallen into the Eighth Amendment realm. And so we're trying to avoid a constitutional issue every time we can, if we can. So if you provide sufficient facts to convince Commerce these rates are too high and, therefore, they're punitive and they're not remedial like they're in the statutes that you follow. If under this AFA determination Commerce looks to the highest rates available, they still can say, and based upon challenges, we're not going to adopt those because here it would be overly punitive. They don't have the discretion to pick the highest rate and have it not be reviewable. It has to still be non-punitive and remedial, even if the statute permits a previously assessed high rate. Theoretically, it still has to conform with this remedial, not punitive thing, which I assume you think is underlined by the Eighth Amendment. At least that's the way some of the court cases have talked about it. Right. I think it lays, once you get beyond the remedial and get into punitive, the overlay is the Eighth Amendment. I mean, they're occurring simultaneously. So if Commerce ignores whatever is brought into it and that rate is set and the importer believes it's simply too high, it now has set itself up to be heard by a court who can then conduct a full constitutional analysis of the information that's before it and see whether it disagrees with Commerce's analysis that it is remedial and not punitive. I mean, the court would first look to see whether it is punitive under the statute before reaching the Eighth Amendment issue. Absolutely. And all of that would be a perfectly good reason to say that even this claim, even if Commerce would say, I'm not going to pay attention to the Eighth Amendment, why the 1581C process is, of course, the process to pursue. Can I ask you an unbelievably mundane question? Sorry. So I'm trying to pinpoint the date on which the instructions to liquidate was issued. The CIT cites to, I think it's paragraphs 18 and 29 of the complaint, which say that the date was July 29th, 2019. I don't quite... I think maybe it should be 2020? I think it should be 2020. Because it was after the May 1st decision. Correct. Or, I mean, after the decision not to institute the 1675 proceeding. Right. It's the one year, the month is May of 2020. You have until the 31st of May to come in. And then if you don't, after the 31st of May, then the instructions go out to... The complaint should be 2020. I think it's 2020. Okay. I told you it was mundane. No, nothing is mundane, right? I mean, you make sure you get the facts right. Anything further? If Your Honors have no further questions, the trial court should be affirmed because its analysis that the proper approach here is to go to commerce first through a C action and then come to the CIT to be heard is appropriate. Thank you very much, Your Honor. We'll reserve three minutes if we'd rather. The other side. Three. Thank you, Your Honors. The contention here is that a company that's been hit with an assessment that is already unconstitutional, that is a claim to be unconstitutional, perfected assessment, has some obligation to go back to the government and ask for a less excessive assessment. I know of no constitutional precedent which requires that. Now, as my learned colleague indicated, and as the lower court said, commerce, they're experts in anti-dumping law. They're not experts in constitutionality. Agencies generally do not have the capability to assess the constitutionality of their own acts. And now what would happen if we went through a C proceeding and then presented our arguments to the Court of International Trade in a C proceeding? The CIT applies a deferential standard of review based on a record before the agency, substantial evidence. Well, that's not how constitutional questions ought to be addressed. Well, they don't apply a deferential standard to legal issues. Not on a legal issue, but they can take it. This is a legal issue. Why would you think the CIT would defer to the Commerce Department on whether a certain rate is unconstitutional? And, Your Honor, why require us to go through commerce at all? Because you might get a resolution that doesn't require addressing the constitutional issue. And that's a fundamental precept across all courts and all kinds of constitutional issues, that if you can avoid the constitutional issue and get the relief you need without addressing it, you do. So if you went to commerce, I know your problem is, practically speaking, this is never going to happen. But that doesn't solve your jurisdictional problem. If you had gone to commerce, you had presented them sufficient information, and you said this AFA rate is punitive, and commerce had said, yes, I agree, we're lowering this rate, that would get you the relief without having to address the constitutional question, right? Again, the constitutionality is not really within commerce's expertise. You didn't answer my question. Well, it's not in customs' expertise either. Well, if you say as a practical matter, as a practical matter, we're an importer. We have no information about the forex duties. I mean, as a practical matter, your complaint here is with the anti-dumping and countervailing duty laws in the first place and the fact that they set up these very high AFA rates. But that's Congress's decision, and unless the statutes that Congress enacted are facially unconstitutional, then I think you have a problem. Well, it's also Congress's decision in Section 502 to say the agency need not consider these arguments. It's entirely possible we participate in a 592 in an annual review. Commerce would say we're not going to talk about the rate being excessive because we don't have to, and then there's nothing for the court to review. If Commerce said we don't have to discuss whether this rate is punitive versus remedial, they would get a remand from the Court of International Trade because the case law requires some look at it. If your argument was this rate doesn't approximate commercial realities, that's correct. That's what 502 doesn't require Commerce to do, but Commerce is still required to determine whether it's remedial or punitive. And if that's what you come in and say is that this is overly punitive, then Commerce has to make a determination. If Commerce doesn't have data from the producer, how can they make that determination? Because they don't know what dumping rate exists. They don't know what subsidy rate exists. They don't have the information, so they're deeming something to have happened. Do you believe that the Chinese government pays $4.50 in subsidies for every dollar worth of steel wheel exported? If that's the case, we're all in the wrong business here. So this is a multi-confiscatory rate. I think on its face, it can be found to be unconstitutional. But if we develop facts before the CIT, let's compare this rate with other rates that were calculated from Chinese companies, see how they compare. Because if you're telling us that a multi-confiscatory rate equal to nearly seven times the value of the goods imported is remedial, I don't think that's going to stand up. And I think the lower court needs to review that and not under 1581C. Thank you. Thank you. We thank both sides. The case is submitted.